PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

EDWIN PERROW BOSIGER, JR.,
                    *Plaintiff-Appellant,*

v.

US AIRWAYS, INCORPORATED; US
AIRWAYS GROUP, INCORPORATED;
ALLEGHENY AIRLINES, INCORPORATED;
PIEDMONT AIRLINES; MIDATLANTIC
AIRWAYS, INCORPORATED; US
AIRWAYS LEASING AND SALES,
INCORPORATED; MATERIAL SERVICES             No. 06-2085
COMPANY, INCORPORATED; PSA
AIRLINES, INCORPORATED; AIRWAYS
ASSURANCE, LTD; THE PLAN
INACCURATELY TITLED NONQUALIFIED
TOP RETIREMENT PLAN,
                    *Defendants-Appellees,*

            and

TOM G. DAVIS,
                    *Party in Interest.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(1:06-cv-00324-GBL)

Argued: October 31, 2007

Decided: December 14, 2007

Before WILKINSON and MOTZ, Circuit Judges, and
Louise W. FLANAGAN, Chief United States District Judge
for the Eastern District of North Carolina,
sitting by designation.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Motz and Judge Flanagan joined.

---

## COUNSEL

**ARGUED:** Sara Pikofsky, THELEN, REID, BROWN, RAYSMAN & STEINER, L.L.P., Washington, D.C., for Appellant. Christopher Alan Weals, MORGAN, LEWIS & BOCKIUS, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** Sherwin S. Kaplan, Byron L. Pickard, THELEN, REID, BROWN, RAYSMAN & STEINER, L.L.P., Washington, D.C., for Appellant. Bridgit M. DePietto, MORGAN, LEWIS & BOCKIUS, L.L.P., Washington, D.C., for Appellees.

---

## OPINION

WILKINSON, Circuit Judge:

In August 2002, US Airways filed for bankruptcy. In order to secure the financing necessary to emerge from bankruptcy, US Airways was forced to terminate the pension plans it administered for its active and retired pilots. A bankruptcy court approved this termination, and this court eventually held that a claim to reverse the termination was equitably moot. In September 2004, US Airways again filed for bankruptcy. A year later, US Airways emerged from this second bankruptcy with a second plan of reorganization.

Six months after US Airways's emergence from its *second* bankruptcy, Edwin Perrow Bosiger, Jr., brought suit in federal district court contending that US Airways had improperly terminated his pension during its *first* bankruptcy. The district court dismissed Bosiger's claim, holding that it was barred because Bosiger failed to file a proof of claim during US Airways's second bankruptcy. After careful consideration, we agree with the district court and affirm its decision. It is simply too late in the day for Bosiger to challenge the termination of his pension: unwinding US Airways's second bankruptcy at this stage would not only unduly lengthen the airline's restructuring, but

it would also upset the legitimate interests of those creditors who relied on US Airways's reorganization plan.

## I.

### A.

In the mid-1990s, US Airways Group, Inc. ("US Airways"), and the Air Line Pilots Association ("ALPA"), an international union representing US Airways's active pilots, reached an agreement on retirement benefits. This agreement called for retired pilots to receive, on a monthly basis, a share of their final salary adjusted for the length of their tenure with US Airways.

In order to provide these monthly benefits, US Airways established a pension plan referred to as the Non-Qualified Top Hat Retirement Plan ("Non-Qualified Plan"). The Non-Qualified Plan supplemented the pre-existing Retirement Income Plan for Pilots of US Airways ("Pilots Defined Benefit Plan"). The Pilots Defined Benefit Plan was a tax-qualified pension plan capped by the Internal Revenue Code, such that it alone could not provide the total retirement benefits promised to US Airways's pilots under the agreement with ALPA.

The Non-Qualified Plan, on the other hand, paid retirement benefits above and beyond those payable by the Pilots Defined Benefit Plan. Although never memorialized in a written contract, the Non-Qualified Plan was maintained pursuant to the original collective bargaining agreement and subsequent letters of agreement between US Airways and ALPA. These letters recognized that the Non-Qualified Plan was necessary "to pay benefits which cannot be paid from the [Pilots Defined Benefit Plan] due to [limitations imposed by the] Internal Revenue Code."

On August 11, 2002, US Airways filed for Chapter 11 bankruptcy.[1] In order to continue its operations during its reorganization and successfully emerge from Chapter 11, US Airways needed almost $1.75

---

[1]This court considered an earlier dispute arising from US Airways's first bankruptcy in *In re US Airways Group, Inc.*, 369 F.3d 806 (4th Cir. 2004). Many of the facts described here are taken from that opinion.

billion in financing. US Airways was able to assemble a syndicate of lenders willing to provide this amount, but the lenders were only willing to extend the credit if US Airways was able to meet certain financial targets.

A major threat to US Airways's ability to access the loans was an escalating pension funding problem, particularly with respect to its pilots, who accounted for a substantial portion of US Airways's outstanding pension obligations. At the same time passenger revenues had dropped precipitously in the wake of the September 11th terrorist attacks, lower interest rates and a poor stock market had greatly decreased the performance of US Airways's defined benefit pension plans, increasing the airline's projected contribution to the plans. This left US Airways with insufficient cash flow to both meet its pension obligations and achieve the financial targets necessary to access the required funding. After exploring various potential solutions to this problem, US Airways determined that, so long as its pilot pension plans were in place, it would be unable to secure the financing it needed to emerge from Chapter 11.

US Airways thus sought to restructure its pilot pension obligations, with its ultimate goal being the termination of the two existing pension plans (Pilots Defined Benefit Plan and Non-Qualified Plan) and their replacement with a defined contribution plan. To do so, US Airways petitioned the bankruptcy court to allow a "distress termination" of its Pilots Defined Benefit Plan under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1341(c)(2)(B)(ii)(IV) (2000). US Airways did not specifically request the "distress termination" of the Non-Qualified Plan because it was under the belief that the Non-Qualified Plan was a "top hat" plan, terminable simply pursuant to an express agreement between US Airways and ALPA approved by the bankruptcy court.

In March 2003, the bankruptcy court ruled that US Airways satisfied ERISA's standards for distress termination. The court therefore allowed US Airways to terminate the Pilots Defined Benefit Plan, subject to a determination that the proposed termination did not violate the collective bargaining agreement with ALPA. US Airways and ALPA subsequently issued Letter of Agreement #85, which approved the termination of both pilot pension plans. The letter stated that the

Pilots Defined Benefit Plan "will be terminated . . . and merged into" a new defined contribution plan available only to active and non-retired pilots, while "the [Non-Qualified Plan] will be terminated, and payments will permanently cease, effective March 31, 2003."

In light of this letter, the bankruptcy court authorized US Airways's "distress termination." At about the same time, the bankruptcy court also approved US Airways's reorganization plan, one part of which stated that all retirement plans sponsored by US Airways "will continue in effect except, to the extent terminated in accordance with applicable law, the Retirement Income Plan for Pilots of US Airways, Inc. and related (non-qualified) Top Hat Plan." Finally, on March 31, 2003, US Airways emerged from bankruptcy, stopped paying benefits on the old Pilots Defined Benefit and Non-Qualified Plans, and started contributing to the new defined contribution plan for non-retired pilots. At this point, retired pilots began to receive benefits from the Pension Benefit Guaranty Corporation, which had guaranteed the Pilots Defined Benefit Plan.

As US Airways emerged from bankruptcy, US Airways's retired pilots appealed the district court's distress termination decision, seeking to have their old pension benefits restored. But since the retired pilots had neglected to have the termination and reorganization orders stayed, and since the orders had been implemented and relied on by third parties, the district court held that the suit was equitably moot. This court affirmed on the same grounds in *In re US Airways Group, Inc.*, 369 F.3d 806, 807 (4th Cir. 2004).

In September 2004, US Airways again filed for bankruptcy. A year later, in September 2005, US Airways emerged from its second bankruptcy with a new plan of reorganization.

### B.

Petitioner Edwin Perrow Bosiger, Jr., is a retired US Airways pilot who, before US Airways's first bankruptcy, had received benefits from both the Pilots Defined Benefit Plan and the Non-Qualified Plan. During US Airways's second bankruptcy, US Airways notified Bosiger by letter of (1) the Chapter 11 filing date and the bar date for filing general unsecured claims and (2) entry of the order confirming

the second Plan of Reorganization, the effective date of the Plan of Reorganization, and the bar date for filing certain administrative and rejection damage claims. Though provided with these two notices, Bosiger did not file a claim during the second bankruptcy.

Bosiger instead chose to bring suit against US Airways six months later, filing a complaint in the United States District Court for the Eastern District of Virginia on March 27, 2006. Bosiger argued that US Airways had improperly terminated the Non-Qualified Plan during its first bankruptcy because the Non-Qualified Plan was a "top hat" plan in name only, and therefore not terminable merely through express agreement between US Airways and ALPA. Bosiger therefore contended that he was still entitled to his benefits under the Non-Qualified Plan.

US Airways responded by filing a Rule 12(b)(6) motion, alleging that Bosiger's complaint failed to state a claim for various reasons. Most relevant to this appeal, US Airways argued that, even if the termination of the Non-Qualified Plan was unlawful, Bosiger had waived any right to challenge the termination of the Plan by failing to file a proof of claim during US Airways's second bankruptcy.

In September 2006, after considering Bosiger's reply to US Airways's motion to dismiss and argument at a hearing on the matter, the district court granted US Airways's motion. The district court articulated two grounds for its holding. First, the court stated that US Airways appropriately considered the Non-Qualifed Plan to be a "top hat" plan. Thus, US Airways had properly terminated the Plan during its first bankruptcy, pursuant to its Letter of Agreement #85 with ALPA and the bankruptcy court's approval of US Airways's reorganization plan.

Second, and in the alternative, the district court held that Bosiger's "claim is barred because he failed to file a proof of claim during US Airways's second bankruptcy." The court reasoned that, to the extent Bosiger had a valid claim after the Non-Qualified Plan was terminated on March 31, 2003, he became a creditor when US Airways entered Chapter 11 a second time in September 2004. Thus, Bosiger was required to file a proof of claim during the second bankruptcy proceeding; his failure to do so led to his claims being discharged

along with the rest of US Airways's debts when US Airways emerged from bankruptcy a second time in September 2005.

Bosiger now appeals the district court's order dismissing his complaint, arguing that each of the court's alternate grounds for its holding constituted error. In particular, Bosiger challenges the court's finding that the Non-Qualifed Plan was a "top hat" plan, and argues that his failure to file a proof of claim during US Airways's second bankruptcy should not bar his present suit.

## II.

We review Bosiger's appeal from the district court's Rule 12(b)(6) dismissal *de novo*, *Smith v. Sydnor*, 184 F.3d 356, 360-61 (4th Cir. 1999), and affirm. In reaching this decision, it is not necessary for us to address whether US Airways appropriately classified the Non-Qualified Plan as a "top hat" plan, because we find that the district court's alternate ground for its holding is sufficient to support our ruling.

As the district court stated, when Bosiger failed to file a proof of claim during US Airways's second bankruptcy, any potential claim he had to payments under the Non-Qualified Plan was extinguished. One of the primary purposes of bankruptcy is the discharge of debts, and the Bankruptcy Code and Rules explicitly state — in several places — that all of a debtor's pre-existing obligations terminate upon the debtor's emergence from bankruptcy. Bosiger does not contest the fact that he failed to file a claim. Instead, he argues that he was not on proper notice of US Airways's second bankruptcy, and it was therefore improper for the district court to dismiss his claim. We find, however, that the district court did not err in determining that Bosiger had received adequate notice and properly dismissed Bosiger's suit on these grounds.

## A.

The "principal purpose" of bankruptcy is straightforward: "to grant a 'fresh start' to the 'honest but unfortunate debtor.'" *Marrama v. Citizens Bank of Massachusetts*, 127 S.Ct. 1105, 1107 (2007) (quoting

*Grogan v. Garner*, 498 U.S. 279, 286, 287 (1991)). To this end, successful completion of the reorganization process allows a debtor, burdened with "'the weight of oppressive indebtedness,'" to restructure its financial obligations, discharge its pre-existing debt, and emerge from bankruptcy with a new capital structure that better reflects financial reality. *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934) (quoting *Williams v. U.S. Fid. & Guar. Co.*, 236 U.S. 549, 554 (1915)). "Replacing the old capital structure with a new one requires the termination of the rights inherent in the old structure." *Douglas G. Baird, et al.*, *Bankruptcy: Cases, Problems, and Materials* 562 (Revised 3d ed. 2001).

Several provisions of the Federal Rules of Bankruptcy Procedure and the Bankruptcy Code work in unison to ensure that debtors receive a "fresh start" after emerging from bankruptcy. First, Bankruptcy Rule 3003(c) requires that "claimants against an estate in bankruptcy . . . file timely proofs of claim in order to participate in a reorganization." *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995). Failure to bring forward such a claim — defined broadly as any "right to payment," *see* 11 U.S.C. § 101(5)(A) (2000) — before the claims bar date established by the bankruptcy court forfeits a claimant's right to participate in a bankruptcy reorganization. *See* Fed. R. Bankr. P. 3003(c)(3); *see also Chemetron*, 72 F.3d at 346. Second, the Bankruptcy Code specifically states that a bankruptcy court's confirmation of a restructuring plan discharges "the debtor from any debt that arose before" the confirmation of the plan. 11 U.S.C. § 1141(d)(1)(A) (2000); *see also United States v. Carolina Parachute Corp.*, 907 F.2d 1469, 1474 (4th Cir. 1990). Third, the Bankruptcy Code further insulates a debtor from his pre-bankruptcy obligations by stating that the discharge of debts "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2) (2000). Taken together, these three provisions prevent pre-petition creditors from hounding a debtor after restructuring, ensuring that the Bankruptcy Code provides a true "fresh start."

In light of the directives of the Bankruptcy Code and Rules, it is clear that Bosiger's claim for payment under the Non-Qualified Plan

is foreclosed by US Airways's second bankruptcy. If US Airways improperly terminated the Non-Qualified Plan during its first bankruptcy, as Bosiger alleges, Bosiger's injury made him an unsecured creditor of US Airways, and therefore the holder of a "claim" within the meaning of 11 U.S.C. § 101(5)(A), during the second bankruptcy. As the holder of a bankruptcy "claim," Bosiger was required, under Fed. R. Bankr. P. 3003(c)(3), to file a proof of that claim with the bankruptcy court before the bar date in order to participate in US Airways's reorganization. He did not do so, and thus, as the bankruptcy court recognized in its Bar Date Order, US Airways was "forever discharged from any and all indebtedness or liability with respect to" any claims not brought to the court's attention.

Although this alone is sufficient to foreclose Bosiger's claim, the bankruptcy court's confirmation of US Airways's second Plan of Reorganization offers further proof that Bosiger's claim is barred. In its Confirmation Order, the bankruptcy court explicitly cited 11 U.S.C. § 1141(d) and stated that US Airways's emergence from bankruptcy served to extinguish all pre-existing "Claims and Causes of Action, whether known or unknown." Moreover, the Confirmation Order mirrors 11 U.S.C. § 524(a)(2) in further noting that the discharge of US Airways's debts serves to enjoin "any Person" from "commencing or continuing any action . . . to collect, offset, or recover any Claim . . . discharged under this Plan." It is thus clear that US Airways's second bankruptcy discharged any claim Bosiger had to payment under the Non-Qualified Plan.

The bankruptcy court in this case — and the Bankruptcy Code and Rules in general — both recognize the dramatic consequences that would result if Bosiger were able to circumvent US Airways's bankruptcy proceedings. To begin, allowing individual creditors to opt out of a formal bankruptcy proceeding in order to bring a subsequent civil lawsuit against a debtor only serves to make bankruptcy proceedings more complex and more costly. Such an outcome directly contradicts the Supreme Court's teaching that the prompt and efficient administration and settlement of a debtor's estate is a principal goal of bankruptcy law. *Katchen v. Landy*, 382 U.S. 323, 328 (1966).

More importantly, unwinding the finality of bankruptcy upsets not only the expectations of the creditors who actually do participate in

the bankruptcy proceedings, but also the reliance interests of the creditors who have advanced funds based on the new capital structure laid out in the reorganization plan. *See In re US Airways Group, Inc.*, 369 F.3d 806, 810 (4th Cir. 2004). This upsetting of reliance interests could ultimately reduce the incentives for anyone to participate in the bankruptcy process. If individual, pre-existing creditors were able to avoid the diminution of their assets inherent in the bankruptcy process by pursuing a separate legal claim, there would be no incentive for anyone to participate in a corporate reorganization. Likewise, lenders would be much less likely to extend financing to debtors faced with uncertain liabilities on pre-petition claims not discharged through their bankruptcy. At the very least, allowing claims such as Bosiger's would greatly increase the cost of capital to debtors emerging from bankruptcy, diminishing their prospects of becoming viable, liquid enterprises. It is thus no exaggeration to say that the very functioning of the bankruptcy system is dependent on its finality.

### B.

It would be difficult for any claimant to challenge directly the critical role played by finality in the bankruptcy process. Instead, Bosiger simply contests the district court's conclusion that he was on notice of US Airways's second bankruptcy. Since notice consistent with the Due Process Clause is a prerequisite for the discharge of a creditor's debts in bankruptcy, Bosiger argues that it was improper to dismiss his claim if he did not receive constitutionally adequate notice.

Bosiger's argument proceeds as follows. First, Bosiger notes that a court is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss. *See, e.g.*, *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). Second, Bosiger claims that the determination of whether a creditor received proper notice is a heavily fact-dependent matter. Bosiger therefore contends that his general denial of having received notice is sufficient to defeat US Airways's Rule 12(b)(6) motion. This is because the district court would have to consider evidence outside the pleadings and resolve a fact-dependent question to overcome Bosiger's denial, something the court is forbidden to do when considering a Rule 12(b)(6) motion.

1.

It is well settled that district courts may convert a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment, allowing them to assess whether genuine issues of material fact do indeed exist. *See, e.g., George v. Kay*, 632 F.2d 1103, 1106 (4th Cir. 1980); *see also* 5C *Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* § 1366, at 159-65 & n.17 (3d ed. 2004) (listing multiple cases from every circuit recognizing the district court's discretionary power to convert a Rule 12(b)(6) motion to a Rule 56 motion). While it may be preferable for a district court to trigger this conversion explicitly, appellate courts may take the district court's consideration of matters outside the pleadings to trigger an implicit conversion of a Rule 12(b)(6) motion to one under Rule 56. *See, e.g., Smith v. Blackledge*, 451 F.2d 1201, 1202 (4th Cir. 1971); 5C *Wright & Miller*, *supra*, § 1366, at 167-78. The ability of appellate courts to perform this conversion *sua sponte* serves judicial economy — a value critically important in the context of a bankruptcy proceeding — by sparing the district court an unnecessary remand. As the Supreme Court has noted: "It would be wasteful to send a case back to a lower court to reinstate a decision which it had already made but which the appellate court concluded should properly be based on another ground within the power of the appellate court to formulate." *See SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943).

In this case, we find that the district court's consideration of matters outside the pleadings did convert US Airways's Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. Both parties had ample opportunity to present material relevant to the question of notice. US Airways submitted extensive briefing along with its motion to dismiss, and Bosiger did likewise in his opposition to that motion. The district court considered this briefing, and also held, on July 7, 2006, a hearing on the motions at which both sides presented argument. Furthermore, both parties presented facts relevant to the question of notice in their briefing to this court.

Given the development of the record on the question of notice, we feel confident that we can apply the summary judgment standard in this case. We thus reject Bosiger's contention that the procedural posture of this case makes his general denial sufficient to resolve the

question of notice. Indeed, to rule otherwise would promote the very circumvention of the bankruptcy process through subsequent civil actions that the Bankruptcy Code and Rules were designed to prevent.

2.

The district court did not err in concluding that Bosiger received adequate notice in this case. US Airways presented substantial evidence that it provided constitutionally sufficient notice to Bosiger that his claim to payment under the Non-Qualified Plan was in danger of being discharged. Bosiger does not effectively rebut this evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."). We therefore find that "there is no genuine issue" of material fact as to the question of notice, and that US Airways is thus "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On the general need for notice, there is little dispute. A pre-existing debt can be discharged through bankruptcy only if the creditor was on notice of a debtor's bankruptcy filing and the claims bar date. In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), the Supreme Court held that a judicial proceeding affecting property interests, to be consistent with due process, must afford any interested party "notice reasonably calculated, under all the circumstances, to apprise [the party] of the pendency of the action and afford [him] an opportunity to present [his] objections." *Id.* at 314. Since a Chapter 11 bankruptcy affects creditors' property interests, these creditors must receive notice consistent with *Mullane* for the outcome of a bankruptcy reorganization, including the discharge of pre-existing debts, to be binding on them. *See, e.g.*, *In re R.H. Macy & Co.*, 161 B.R. 355, 359 (Bankr. S.D.N.Y. 1993).

Courts have interpreted the *Mullane* standard flexibly in the bankruptcy context, measuring the adequacy of notice against the certainty of a creditor's claims. *See Mullane*, 339 U.S. at 315 ("The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."). If a creditor possesses either a "conjectural or future" interest that "do[es] not in due

course of business come to [the] knowledge" of the debtor, *id.* at 317, courts have held that notice by publication is sufficient, *see Chemetron*, 72 F.3d at 346. Conversely, if the "name[ ], interest[ ], and address[ ]" of a creditor is known, actual written notice is required. *See City of New York v. New York, New Haven & Hartford R.R. Co.*, 344 U.S. 293, 296 (1953); *see also Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 489-90 (1988).

While the flexibility of the *Mullane* standard can make it difficult, in certain cases, to determine if a creditor received proper notice in a bankruptcy proceeding, it does not do so in this case. This is because Bosiger clearly received notice sufficient to meet the requirements of *Mullane* given the circumstances of his case. During US Airways's second bankruptcy, Bosiger was sent two timely letters: the first, sent on October 15, 2004, notified him of the Chapter 11 filing date and the bar date for filing general unsecured claims, *see In re US Airways, Inc.*, Case No. 04-13819-SSM (Bankr. E.D. Va.) (Docket #571), and the second, sent on October 4, 2005, notified him of the entry of the order confirming the second Plan of Reorganization, the effective date of the Plan of Reorganization, and the bar date for filing certain administrative and rejection damage claims, *see id.* (Docket #3301). These letters are sufficient to establish that Bosiger received actual notice of US Airways's second bankruptcy, to say nothing of the fact that, as the district court pointed out, US Airways's bankruptcy was very well-publicized and that Bosiger, as a retired US Airways pilot, could be expected to possess more than a passing interest in those proceedings.

Furthermore, the very event that prompted Bosiger to bring this suit — the termination of his payments under the Non-Qualified Plan — occurred almost 18 months before US Airways declared bankruptcy for the second time and nearly three years before Bosiger brought suit in district court. The termination of payments could reasonably be expected to place a recipient or beneficiary such as Bosiger on the alert. Moreover, the termination of US Airways's pilot pension plans was already the subject of a lengthy litigation, ultimately resolved by this court, between US Airways and its retired pilots. *See In re US Airways Group, Inc.*, 369 F.3d 806 (4th Cir. 2004). Thus, while the termination of Bosiger's benefits and the subsequent litigation in the first bankruptcy concerning that termination

may not have provided Bosiger with official notice of US Airways's second bankruptcy, it certainly should have made him aware that he was potentially a creditor of US Airways and that he bore the same responsibility as every other creditor: to file a proof of claim during US Airways's second bankruptcy.

The primary evidence Bosiger offers to rebut the foregoing is his own deposition testimony that he cannot "recall receiving any notice of the second bankruptcy." This general denial is insufficient to over-come the substantial evidence indicating that Bosiger received ade-quate notice. To begin, we must presume, absent strong evidence to the contrary, that Bosiger received the letters of notice mailed to him. *FDIC v. Schaffer*, 731 F.2d 1134, 1137 (4th Cir. 1984) (noting that, for notice purposes, an individual is presumed to have received mail "delivered to [a home] in the regular course of mail delivery"); *see also Hagner v. United States*, 285 U.S. 427, 430 (1932) ("The rule is well settled that proof that a letter properly directed was placed in a post office, creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed."); *In re Eagle Bus Mfg., Inc.*, 62 F.3d 730, 735-36 (5th Cir. 1995) (same); *In re Bucknum*, 951 F.2d 204, 206-07 (9th Cir. 1991) (same).

Bosiger's general denial does not constitute the strong evidence needed to overcome the presumption of receipt.[2] If we were to hold

---

[2]At the July 7, 2006 motions hearing to discuss US Airways's motion to dismiss, Bosiger's counsel indicated that the two letters providing notice of US Airways's bankruptcy may have been mailed to the wrong address. Bosiger's counsel mentioned that the notice letters were mailed to the Florida address of an "Ed Bosiger," and Bosiger's counsel repre-sented that Edwin Bosiger, Jr., who is the Plaintiff-Petitioner in this case, resides in Virginia. However, Bosiger's counsel admitted during the hearing that he had not spoken to his client on this point, and that he was therefore unable to confirm whether the letters had, in fact, been errone-ously mailed to the wrong location.

Bosiger did not reiterate this argument in his briefing before this court. Bosiger's counsel did, however, under direct questioning at oral argu-ment, state that she "believed" that Bosiger lived in Virginia when the notice was mailed to Florida. US Airways's counsel noted that Bosiger

that Bosiger's general denial was sufficient, it would make it discernibly more difficult for any court to grant summary judgment in any case where proper notice is required. The result would be to prolong and undercut the bankruptcy process by civil actions on the part of creditors who failed to pursue their claims when it was timely and appropriate for them to do so. The district court was right to recognize this danger, and its decision is

*AFFIRMED*.

---

testified during a deposition that he lived in the residence in Florida in 2004 (when the first notice was mailed), and that he still owned the Florida residence as of 2006.

Given the tentative nature of the claims put forward by Bosiger's counsel, we accord little weight to the argument that Bosiger's notice was mailed to the wrong address. At the very least, the speculative nature of the claims demonstrate that they do not offer sufficient evidence that Bosiger did not receive his notice letters.