**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 11-6329**

_____

MICHAEL ANTWON WILLIAMS,

                Plaintiff - Appellant,

       v.

G.J. BRANKER, Warden; ROBERT C. LEWIS, Director of Prisons,

                Defendants – Appellees,

       and

MICHAEL A. MUNNS, Deputy Warden; R. WELLMAN, Assoc. Warden
of Operation,

                Defendants.

_____

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.  James C. Dever III,
District Judge.  (5:09-ct-03139-D)

_____

Argued:  December 7, 2011        Decided:  January 20, 2012

_____

Before WILKINSON and DUNCAN, Circuit Judges, and Richard M.
GERGEL, United States District Judge for the District of South
Carolina, sitting by designation.

_____

Affirmed by unpublished opinion.  Judge Duncan wrote the
opinion, in which Judge Wilkinson and Judge Gergel joined.

_____

**ARGUED:** James Phillip Griffin, Jr., NORTH CAROLINA PRISONER
LEGAL SERVICES, INC., Raleigh, North Carolina, for Appellant.

Elizabeth F. Parsons, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Ann Ferrari, NORTH CAROLINA PRISONER LEGAL SERVICES, INC., Raleigh, North Carolina, for Appellant. Roy Cooper, Attorney General, Raleigh, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Appellant Michael Williams, an inmate at Central Prison in Raleigh, North Carolina, sought declaratory and injunctive relief under 42 U.S.C. § 1983, alleging that prison officials violated his Eighth Amendment rights by failing to effectively treat his mental illness and imposing upon him conditions of confinement that exacerbated it. Appellees are G.J. Branker, warden of Central Prison, and Robert C. Lewis, director of prisons for the North Carolina Department of Prisons. Williams sued appellees in their official capacities. The district court granted appellees' motion for judgment on the pleadings and dismissed Williams's suit. For the reasons that follow, we affirm.

I.

A.

The following facts are taken from Williams' Third Amended Complaint. For purposes of our review, we assume them to be true. See McVey v. Stacey, 157 F.3d 271, 274 (4th Cir. 1998).

In 1993, at the age of 16, Williams began serving a 20-year prison sentence in facilities run by the North Carolina Department of Corrections ("DOC"). Throughout his incarceration, Williams has suffered from severe mental illness and was diagnosed with, among other disorders, psychotic

3

disorder, schizophrenia, borderline personality disorder, and intermittent explosive disorder. Williams's mental illness has manifested itself through, inter alia, behavioral outbursts as well as "thoughts of suicide [and the] ingesting or inserting [of] foreign bodies[] and severe self lacerations." J.A. 7. "He has [had] numerous stays in an inpatient psychiatric setting due to his extensive history of ingesting or inserting foreign bodies, and severe self lacerations that have required emergency medical attention." Id.

As a result of his mental illness and its manifestations, at the time of his complaint in 2010, Williams had spent approximately 10 years of his incarceration in "segregated confinement." J.A. 8. Williams described his segregated confinement as follows:

> [A] small cell whose dimensions are approximately twelve feet by six feet. The floor, walls, and ceiling of the cell are concrete. There is a narrow window that looks out only on the hallway outside the cell. There is a slot through which food trays and other materials may be passed, and through which [Williams] must extend his hands to be cuffed before the steel door is opened.

Id. Beyond the spartan nature of his confinement, Williams was also subject to several lifestyle restrictions. For example, Williams was only "allowed to leave his cell for one hour on five days of each week"; was "kept indoors constantly" and has not had "outdoor recreation [for] several years"; was allowed

4

minimal contact with other inmates; could not participate in religious, work, rehabilitative, or other activities; and was not allowed "access to a television, and ha[d] very limited access to reading materials." J.A. 8-9. In addition to these restrictions, Williams was subject to additional punishment at times, including being placed in "restraints in a concrete cell alone for four hour periods[,] caus[ing] pain and mental distress." J.A. 9.

B.

Williams brought suit against appellees under 42 U.S.C. § 1983, claiming that "[i]nstead of [receiving] effective treatment for his mental illness" he was "being punished with atypical and significant hardships over and above those imposed under his sentence." J.A. 8. Williams alleged that these hardships were a result of policies created and implemented by appellees and were in violation of his right under the Eighth Amendment to be provided with adequate medical care and humane conditions of confinement. Specifically, Williams alleged that "[t]he social isolation, arbitrary punishments, lack of exercise and other conditions of the confinement imposed on him by policies created and maintained by [appellees] have caused [him] serious and unnecessary pain and suffering." J.A. 10.

As Williams described it, his mental illness caused him to act out, which in turn led to additional restrictions. He

5

alleges the existence of a pernicious circle. As these restrictions mounted, they aggravated his mental illness, causing him to misbehave further. Williams was "told he will be allowed additional privileges when he is able to remain infraction free for long periods of time, yet the effect of [the restrictions] effectively prevents him from remaining infraction free." Id. Williams has alleged that this cycle was exacerbated by the fact that "[c]orrectional staff are not trained in the identification and management of the mentally ill. They assume that Plaintiff is willfully disobedient or disruptive, when in fact his behavior is at times beyond his control." Id. As to the appellees, Williams further alleged:

> As trained and experienced corrections professionals, [appellees] are aware of the dangers and risks to [Williams] caused by their policies of long term confinement and the cruel and unusual conditions imposed upon him. Regardless of this knowledge, [appellees] have acted with deliberate indifference to his right to be free from unnecessary suffering and mental and physical harm.

Id.

Williams sought a declaration that his treatment violated the Eighth Amendment and an injunction barring DOC officials and employees from treating Williams in a similar fashion in the future.

Appellees filed an answer with various exhibits attached, and moved for judgment on the pleadings pursuant to Federal Rule

6

of Civil Procedure 12(c).[1] The district court granted appellees' motion, concluding that "although [Williams's] conditions of confinement are unpleasant, they do not deprive Williams of basic human needs." J.A. 182. In its opinion, the district court relied on some of the exhibits to appellees' answer, including portions of the DOC Policy and Procedure Manual and select reports from Williams's inmate file regarding his mental health status. In doing so, however, the district court did not indicate that it was converting appellees' motion for judgment on the pleadings to a motion for summary judgment.

## II.

On appeal, Williams argues that the district erred both procedurally and substantively in granting appellees' motion for judgment on the pleadings. Williams argues that the district court erred procedurally in considering exhibits to the appellees' answer, thereby constructively converting appellees' Rule 12(c) motion into a Rule 56 summary judgment motion without giving Williams notice or a reasonable opportunity to respond. Williams asserts that the district court's conclusion was substantively flawed in that his complaint contained factual

---

[1] Rule 12(c) states: "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings."

allegations sufficient to state a claim for Eighth Amendment violations on its face.

### A.

We first consider Williams's argument that by relying on attachments to the appellees' answer, the district court improperly converted appellees' motion for judgment on the pleadings to a motion for summary judgment without giving notice to Williams. We review a district court's actions in converting a Rule 12 motion into a motion for summary judgment for abuse of discretion. See Baker v. Provident Life & Acc. Ins. Co., 171 F.3d 939, 943 n.* (4th Cir. 1999).

Matters outside of the pleadings are generally not considered in ruling on a Rule 12 motion. Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004). Matters--such as exhibits--are outside the pleadings if a complaint's factual allegations are not expressly linked to and dependent upon such matters. See id. A court may convert a Rule 12 motion into a summary judgment proceeding in order to consider matters outside of the pleadings. Fed. R. Civ. P. 12(d); Bosiger v. U.S. Airways, 510 F.3d 442, 450 (4th Cir. 2007). In doing so, however, the court must assure that the parties are on notice of the changed status of the motion. Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979). Nevertheless, it is widely accepted that if the plaintiff's

8

allegations, taken as true, do not state a claim for relief, any error caused by such a conversion without notice is harmless. See, e.g., Renchenski v. Williams, 622 F.3d 315, 341 (3d Cir. 2010); Colbert v. Potter, 471 F.3d 158, 168 (D.C. Cir. 2006); United States v. Stevens, No. 95-6739, 1995 WL 559524, at *1 (4th Cir. September 21, 1995) (unpublished).

Here, the district court considered both the DOC Policy and Procedure Manual and select reports from Williams's inmate file regarding his mental health status. Although Williams's allegations are arguably dependent on and linked to the DOC's policies and procedures, we are troubled by the district court's reliance on reports from Williams's inmate file handpicked by the defendants, because the complaint is not dependent on such reports. Nonetheless, in reviewing the district court's order to dismiss, we will consider only the allegations set forth in Williams's complaint. Accordingly, any error by the district court will be rendered harmless.

### B.

We now consider whether Williams has pleaded sufficient facts on which to state a violation of the Eighth Amendment. We conclude that he has not.

We review a grant of a Rule 12(c) motion for judgment on the pleadings de novo, applying the same standard of review we apply to a Rule 12(b)(6) motion to dismiss, Burbach Broad. Co.

9

of Del. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002). Specifically, we look to whether the factual allegations in the complaint "raise a right to relief above the speculative level and . . . state a claim to relief that is plausible on its face." Robinson v. Am. Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009) (internal quotation marks omitted). "In conducting this review, we take the facts in the light most favorable to the plaintiff, but we need not accept the legal conclusions drawn from the facts, and we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation marks omitted).

Although the text of the Eighth Amendment is limited to cruel and unusual punishments, the Amendment may also "be applied to some deprivations that were not specifically part of the sentence but were suffered during imprisonment." Wilson v. Seiter, 501 U.S. 294, 297 (1991). In this way, "[t]he Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994).

The Supreme Court has prescribed a two-part inquiry to determine whether prison officials' conduct violated their duty under the Eighth Amendment to provide humane conditions of

10

confinement.[2]  The first part of the inquiry asks whether the conditions of confinement inflict harm that is, objectively, sufficiently serious to deprive a prisoner of minimal civilized necessities.  Id. at 834.  The second part of inquiry asks whether prison officials subjectively acted with "deliberate indifference to inmate health or safety," meaning that they actually knew of and disregarded the inhumane nature of the confinement.  Id. at 837 (internal quotation marks omitted).  We consider each prong in turn.

1.

We must first determine whether Williams's conditions of confinement objectively deprived him of minimal civilized necessities such as adequate food, clothing, shelter, medical care, or physical safety.  See In re Long Term Admin. Segregation of Inmates Designated as Five Percenters (Five

---

[2] Williams's complaint contains allegations that may be interpreted both as claims of inadequate medical care based upon the lack of effective treatment for his mental illness and inhumane conditions of confinement based on his isolation and restrictions.  For the purposes of our analysis, however, this is a distinction without a difference. See Wilson, 501 U.S. at 303 ("[W]e see no significant distinction between claims alleging inadequate medical care and those alleging inadequate 'conditions of confinement.'  Indeed, the medical care a prisoner receives is just as much a 'condition' of his confinement as the food he is fed, the clothes he is issued, the temperature he is subjected to in his cell.").  Accordingly, we review the sufficiency of all of his allegations under the same rubric.

11

Percenters), 174 F.3d 464, 472 (4th Cir. 1999). This analysis is informed by our recognition that "[o]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997).

Williams's first claim of extreme deprivation is that he was denied effective treatment for his mental illness. For an allegation of inadequate medical care to support an Eighth Amendment claim there must be "neglect of 'serious' medical needs." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996) (quoting Hudson v. McMillian, 503 U.S. 1, 8-9 (1992)); see also Hudson, 503 U.S. at 9 ("[S]ociety does not expect that prisoners will have unqualified access to health care."). Assuming, without deciding, that Williams's mental illness created a serious medical need, we conclude that his allegations regarding his medical treatment do not rise to the level of neglect. For instance, Williams does not allege that his illness was ignored or that he was denied treatment, either altogether or even to a considerable extent. To the contrary, his complaint alleges that he has had "numerous stays in an inpatient psychiatric setting." J.A. 7. Williams points to no authority for the proposition that the Eighth Amendment entitles him to "effective" treatment, or that DOC is a guarantor of mental health. Cf. Jackson v. Meachum, 699 F.2d 578, 583 (1st Cir.

12

1983) (noting that to "make the Eighth Amendment a guarantor of a prison inmate's prior mental health . . . would go measurably beyond what today would generally be deemed 'cruel and unusual'"). Accordingly, we cannot hold that the lack of effective mental health treatment deprives Williams of a basic human need.

Williams next claims that the conditions of his confinement amount to an extreme deprivation because the isolation and behavioral restrictions to which he is subject "aggravate" his mental illness and thus "cause him present and ongoing injury to his mental health." Appellant's Br. 11, 13. The conditions of which Williams complains, however, are no different from those we found not actionable in Five Percenters, amid a claim that those conditions harmed plaintiffs' mental health. In that case, plaintiffs alleged, inter alia, that they were "confined to their cells for twenty-three hours per day without radio or television, that they receive[d] only five hours of exercise per week, and that they [could] not participate in prison work, school, or study programs." 174 F.3d at 471. We observed that negative effects of such restrictions on mental health "are unfortunate concomitants of incarceration; they do not, however, typically constitute the 'extreme deprivations . . . required to make out a conditions-of-confinement claim.' " Id. at 472 (quoting Hudson, 503 U.S. at 8-9).

13

The fact that the conditions to which Williams was subjected aggravated his mental illness is an unfortunate but inevitable result of his incarceration. This is particularly so given the twin responsibilities of prison officials to limit the opportunities for Williams to harm both himself and others. Accordingly, we cannot conclude that such aggravation amounts to the denial of a minimal civilized necessity, especially when the conditions alleged to have caused that aggravation clearly meet or exceed minimal standards. Because Williams's allegations do not show an extreme deprivation resulting in the denial of a minimal necessity of life, his claim must fail.

2.

Even if Williams alleged facts in his complaint sufficient to show an extreme deprivation resulting in the denial of a minimal necessity of life, however, he would still have to show that prison officials were deliberately indifferent to the deprivation and the substantial risk of harm resulting from it. See Farmer, 511 U.S. at 836. This is a subjective standard: Williams must show an actual awareness of the danger, not merely that officials should have been aware of it. See Brown v. Harris, 240 F.3d 383, 389 (4th Cir. 2001). Furthermore, "general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm

14

confronting the inmate." Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

In an attempt to establish deliberate indifference, Williams alleges, in conclusory fashion, that "[a]s trained and experienced corrections professionals, [appellees] are aware of the dangers and risks to [Williams] caused by their policies of long term confinement and the cruel and unusual conditions imposed upon him." J.A. 10. Appellees' training and experience, however, can, at most, support an allegation that they should have known of the risk to Williams's mental health posed by the lack of effective treatment and conditions of confinement. Williams alleges no facts suggesting that appellees had actual knowledge of the risks to him. This omission is fatal to his claim. As we have held, "[t]he prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.' " Johnson, 145 F.3d at 168 (quoting Farmer, 511 U.S. at 837).[3]

---

[3] Williams seeks to rely on Farmer to support his allegation of actual awareness. In that case, the Supreme Court considered whether an Eighth Amendment violation occurred when a transsexual prisoner was allegedly beaten and raped by fellow inmates when he was placed in the general prison population. 511 U.S. at 833-34. Williams asserts that in Farmer, prison officials were "aware of the heightened risk to plaintiff's safety posed by the conditions on the unit based on his transsexuality." Appellant's Br. 16. Williams goes on to argue
(Continued)

15

Finally, even if prison officials were aware of the harm Williams was suffering, his allegations are insufficient to show that officials were indifferent to that harm. Where the safety of the inmate, other inmates, or prison staff are at issue, the subjective component of the Eighth Amendment inquiry also takes into consideration "threat[s] to . . . safety . . . as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." Whitley v. Albers, 475 U.S. 312, 321. Cf. Bell v. Wolfish, 441 U.S. 520, 547 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

---

that prison officials here were likewise aware of his mental illness, and therefore of the "heightened risk to him posed by the conditions of long-term segregated confinement." Appellant's Br. 16. This analogy does not aid Williams, however, because the Supreme Court in Farmer never decided whether the plaintiff in that case satisfied the subjective part of the test; it merely opined that the district court had used an incorrect standard in evaluating his claim and remanded for reconsideration. 511 U.S. at 848-49. In other words, Farmer does not stand for the proposition that that a prison official's knowledge of a characteristic that could create a risk of harm to an inmate provides that official with actual knowledge of a specific risk of harm to that inmate. Instead, as stated in Johnson, a prisoner must allege that prison officials actually drew the inference between the characteristic and a specific risk of harm.

16

In his complaint, Williams acknowledges a history of self abuse and behavioral outbursts, and that he has been diagnosed with a number of potentially violent conditions--such as "psychotic disorder" and "intermittent explosive disorder"--that put him and others, including inmates and staff, at risk of harm. J.A. 7. Specifically, his complaint alleges that he has "a psychiatric history of self injury and reports of thoughts about suicide. He has numerous stays in an inpatient psychiatric setting due to his extensive history of ingesting or inserting foreign bodies, and severe self lacerations that have required emergency medical attention." Id. Against this background, the conditions of Williams's confinement appear designed to limit his ability and opportunity to inflict harm on himself or others, rather than intended to exacerbate his medical condition.[4] As such, appellees' institution of these conditions cannot be said to be a result of deliberate indifference on their part.

---

[4] Indeed, had prison officials loosened the restrictions on Williams, and Williams then took his own life, those prison officials could face liability for their deliberate indifference to Williams's suicide risk. See, e.g., Brown, 240 F.3d at 390-91; Clouthier v. Cnty. of Contra Costa, 591 F.3d 1232, 1244-45 (9th Cir. 2010); Perez v. Oakland Cnty., 466 F.3d 416, 424-25 (6th Cir. 2006).

III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.