**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

**No. 17-1890**

---

SADE GARNETT,

       Plaintiff - Appellant,

   v.

REMEDI SENIORCARE OF VIRGINIA, LLC,

       Defendant - Appellee,

   and

AARON TRY,

       Defendant.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Henry E. Hudson, Senior District Judge. (3:17-cv-00128-HEH)

---

Argued: May 9, 2018                           Decided: June 11, 2018

---

Before WILKINSON, and NIEMEYER, Circuit Judges, and Richard M. GERGEL, United States District Judge for the District of South Carolina, sitting by designation.

---

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Niemeyer and Judge Gergel joined.

---

**ARGUED:** Richard F. Hawkins, III, THE HAWKINS LAW FIRM, PC, Richmond, Virginia, for Appellant. Elena D. Marcuss, MCGUIREWOODS LLP, Baltimore,

Maryland, for Appellee. **ON BRIEF:** Adam T. Simons, MCGUIREWOODS LLP, Baltimore, Maryland, for Appellee.

_____

WILKINSON, Circuit Judge:

When Sade Garnett took off work to undergo a medical procedure, her coworker Aaron Try engaged in crude, baseless, and ignorant speculation about the reasons for her absence. Garnett filed this defamation suit against their mutual employer, Remedi SeniorCare of Virginia. The district court concluded that the statement was not defamatory and dismissed the suit. We affirm, but on different grounds. The alleged statement, while offensive and odious, will not support an action against Remedi under Virginia law because a company cannot be held liable for employee statements made outside the scope of employment.

I.

Remedi SeniorCare is an institutional pharmacy that ships medications to nursing homes and other long-term care facilities. Garnett worked at its Ashland, Virginia location, often alongside Try, a night supervisor.

On January 14, 2015, Garnett told Try she would be out the next day to undergo surgery. During that absence, Garnett alleges that Try told other Remedi employees that "Sade was having surgery on her vagina because she got a STD [be]cause that's the only reason a female gets surgery on her vagina," and that "Sade was having a biopsy of her vagina." J.A. 67.

Garnett filed suit against Remedi in the Circuit Court for the City of Richmond. Remedi removed the case to the United States District Court for the Eastern District of Virginia based on diversity jurisdiction.

3

The district court dismissed Garnett's claims. Because Try's statement was "clearly only Try's opinion based on his faulty reasoning," and "no reasonable person would take Try's statement to be anything more than pure conjecture," the court concluded that it was not actionable under Virginia law. J.A. 61. The court then denied Garnett's request to amend her complaint on the grounds that it would "retain the same deficiencies as the one previously dismissed." *Id.*

This appeal followed. We "review de novo the grant of a motion to dismiss for failure to state a claim." *Gerner v. County of Chesterfield*, 674 F.3d 264 (4th Cir. 2012). We review for abuse of discretion a denial of leave to amend a complaint.

## II.

In Virginia, "a private individual asserting a claim of defamation first must show that a defendant has published a false factual statement that concerns and harms the plaintiff or the plaintiff's reputation." *Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 46, 670 S.E.2d 746, 750 (2009). We are not willing to say at the motion to dismiss stage that Try's statement was not defamatory. To do so would be to hold that no action could be brought against Try personally, and possibly that a plaintiff could never prevail against a supervisor who boasts of inside knowledge of the plaintiff's sexual activities and medical history without any factual basis. But assuming arguendo that Try's statements were defamatory, we must still consider whether those statements were within the scope of his employment and thus whether his employer can be held vicariously liable.

Ordinarily, "a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). However, where "the proper

4

resolution is beyond any doubt" or "where injustice might otherwise result," we may affirm on alternate grounds. *Id.* at 121 (citing *Hormel v. Helvering*, 312 U.S. 552, 556 (1941)). This case qualifies as an exception to the general rule. The outcome is not in doubt and a remand would work an injustice on the parties and the trial court by forcing them to undergo another round of pointless litigation. Moreover, as we shall explain, the parties were certainly aware of the scope of employment issue because it was asserted in the complaint, though without the benefit of any explanation. And the issue was taken up at some length at oral argument, where appellant was unable to provide any satisfactory answers. We therefore consider vicarious liability as an alternate ground for affirmance in this case.

A.

The deeply offensive nature of Try's statement gives rise to an understandable temptation to hold his employer responsible in some way for what happened. After all, Try was in Remedi's employ and he made the statement at work. To understand why we cannot pursue this course under law requires some discussion of the origins and purposes of the doctrine of respondeat superior and why limitations on employer liability in circumstances such as these are necessary.

Vicarious liability is somewhat different from most other forms of tort liability because one party is held responsible for the actions of another. *See* Restatement (Third) of Agency Law § 7.07. It is elementary that tort law aims to redress private wrongs and deter misconduct. *See, e.g.*, Ernest J. Weinrib, *The Idea of Private Law* 3-11 (2012). The goal of redressing private wrongs is based on principles of justice. An individual should

5

be able to witness justice by bringing his wrongdoer to court and winning a monetary judgment or an injunction. Social welfare concerns justify the deterrent goal. In order to reduce social harms, tort liability makes wrongdoers pay a price for injuring another and thereby disincentivizes countless forms of careless or antisocial conduct.

Under a theory of vicarious liability, an employer may be held liable even though an individual employee is the actual tortfeasor. That makes sense when the employee action furthers the interests of the employer or when the individual tortfeasor uses his workplace responsibilities to facilitate the tort. In such circumstances, the employer both bears some responsibility for the tort and might have been able to prevent its commission by adopting different or more stringent workplace policies.

There is thus little question that employers can be held liable when they order or actually ratify a tort. *See, e.g.*, *Bishop v. Montague*, Cro. Eliz. II (1600). Employers also bear legal responsibility when their own negligence facilitates the commission of a tort. *See, e.g.*, *Fletcher v. Baltimore & P.R. Co.*, 168 U.S. 135, 138 (1897). It is easy to assign responsibility in such circumstances because the employer's wrongful conduct was directly related to the commission of the tort.

An employer can also sometimes be held liable even when it did not intend or sanction any wrongful conduct. In these cases, employer liability can still serve the deterrent purpose of tort law, because the employer might be able to implement policies that will reduce the likelihood that its employees will engage in tortious conduct. For that reason, the doctrine of vicarious liability can act as a useful deterrent.

B.

6

But this is not to say that the principle of vicarious liability is without limits. It is more problematic for states to impose legal liability on an employer for conduct that cannot possibly be connected to it. As a general matter, the employer can only be held responsible for an employee's misconduct if that conduct falls within the "scope of employment." *See* Restatement (Third) of Agency Law § 2.04. This requirement limits vicarious liability to situations in which the employee was either (a) performing work assigned by the employer or (b) engaging in a course of conduct subject to the employer's control. *Id.* § 7.07 (2006) ("An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control."); *see also Alan O. Sykes*, *The Boundaries of Vicarious Liability: An Economic Analysis of The Scope of Employment Rule and Related Legal Doctrines*, 101 Harv. L. Rev. 563, 582 (1988). The employer may therefore avoid liability when an employee acts independently or in a manner that does not serve any goal of the employer. The "scope of employment" requirement thus ensures that vicarious liability remains tethered to the general goals of tort law: Liability will attach only if the employer (a) bears at least partial responsibility for the tortious conduct or (b) has some ability to limit the likelihood that the employee would commit a tort.

It would hardly be possible for an employer to successfully police all employee interactions and thereby ensure that employee conversation never crosses decorous lines. There are literally millions of verbal workplace interactions, some of which may, unfortunately, be quite offensive. But to hold that such statements invariably give rise to vicarious liability admits of no limiting principle.

7

Without the scope of employment requirement, employers such as the one here could hardly protect themselves from liability without proctoring the minutiae of a worker's daily life or imposing draconian restrictions on employee speech. Workplace statements can be endlessly litigated: What was said? Was a given statement serious or in jest? In what context was it made and was it misunderstood? There is no reason to hold employers liable for an employee's statements when those statements serve no plausible employer interest, the employee's workplace responsibilities did not facilitate the tort, and only the most heavy-handed workplace policies would have stood a chance of preventing the offensive conduct. It is difficult to see how employers could prevent all offensive or defamatory speech at the proverbial watercooler without transforming the workplace into a virtual panopticon. For all its undoubted value, respondeat superior and the resultant fear of liability should not propel a company deep into the lives of its workers whose privacy and speech interests deserve respect.

The law thus abounds with instances where respondeat superior is tempered but without eliminating the obligation on employers to make reasonable efforts to improve the workplace environment and head off deleterious conduct. To take but one example, the Supreme Court has recognized that employers can raise an affirmative defense in a Title VII sexual harassment suit if the employer has "exercised reasonable care to avoid harassment and to eliminate it when it might occur." *Faragher v. City of Boca Raton*, 524 U.S. 775, 805 (1998); *Burlington Industries v. Ellerth*, 524 U.S. 742, 757 (1998). The same tempering of respondeat superior is apparent in the public sphere, where courts have limited municipal and supervisory liability in suits brought under 42 U.S.C. § 1983.

8

*See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."); *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984) (A plaintiff asserting supervisory liability "must show that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'"). In this way, law supplements but does not supplant the self-interest that companies (and public institutions) have in curbing harmful workplace conduct and boosting employee morale.

C.

Virginia has recognized the importance of this careful balance by refusing to reflexively expand vicarious liability and instead defining clear limits to the doctrine of respondeat superior. In Virginia, "an employer is liable for the tortious acts of its employee if the employee was performing his employer's business and acting within the scope of his employment when the tortious acts were committed." *Plummer v. Ctr. Psychiatrists, Ltd.*, 252 Va. 233, 237, 476 S.E.2d 172, 174 (1996). In other words, there must be a nexus between the employee's workplace responsibilities and the offensive act.

The Supreme Court of Virginia has clarified that an employee's act falls within the scope of his employment only if (1) the act "was expressly or impliedly directed by the employer, or is naturally incident to the business, and (2) it was performed . . . with the intent to further the employer's interest." *Kensington Assocs. v. West*, 234 Va. 430, 432, 362 S.E.2d 900, 901 (1987). Where an agent's tortious actions promote an employer's interests, respondeat superior generally applies.

9

The situation is slightly more complex when an employee acts against the wishes of his employer. But again, Virginia has been careful to limit respondeat superior to situations in which the employer bears some responsibility. If a tort does not further an employer's interests, the employer can only be held liable if the tort can be fairly and reasonably traced to the employee's workplace responsibilities. *Gina Chin & Assocs., Inc. v. First Union Bank*, 260 Va. 533, 542, 537 S.E.2d 573, 578 (2000). Of course, vicarious liability can arise in a number of different contexts, and Virginia has recognized vicarious liability when a tort is closely tied to workplace performance. *See id.* (finding that a bank could be held vicariously liable when a bank teller used his position to facilitate a forgery scheme); *Plummer*, 476 S.E.2d at 174 (finding that a psychiatric center could be held vicariously liable when a psychologist engaged in sexual intercourse with a patient). While the employees in both *Gina Chin* and *Plummer* acted out of self-interest and in violation of workplace policies, their misconduct could nevertheless be considered "within the ordinary course" of business because it occurred through the execution of their professional responsibilities. *See Gina Chin*, 537 S.E.2d at 579.

D.

Garnett makes much of the fact that Try's comment occurred at work. That, however, is hardly dispositive. The cases recognize that some things occur at work that bear little or no relationship to an employer's business mission. *See Blair v. Def. Servs., Inc.*, 386 F.3d 623, 628 (4th Cir. 2004) (finding that a janitorial worker's sexual assault of a student was clearly outside the scope of his employment because it deviated from his workplace duties); *Lacasse v. Didlake, Inc.*, 712 F. App'x 231, 235-36 (4th Cir. 2018)

10

("It is well established that the simple fact that an employee is at a particular location at a specific time as a result of his employment is not sufficient to impose respondeat superior liability on the employer.") (citing *Cary v. Hotel Rueger, Inc.*, 195 Va. 980, 81 S.E.2d 421, 424 (1954)). That a remark occurred at work is thus one factor in a scope of employment analysis, but it is not without more sufficient to impute vicarious liability.

Garnett simply fails to supply the "more" that would be necessary to hold Remedi responsible for Try's vulgar remarks. As a result, her complaint fails the basic test, set forth by the Supreme Court in *Ashcroft v. Iqbal*, that "only a complaint that states a plausible claim for relief survives a motion to dismiss." 556 U.S. 662, 679 (2009). The problem is that Garnett's complaint hardly made any attempt to connect Try's remarks to Remedi's business interests or to explain how the offensive statements otherwise fell within the scope of his employment. Only five of the thirty-three paragraphs in the entire second amended complaint mentioned Remedi's role at all. By contrast, twenty-four paragraphs discussed Try's remarks and sought to stress the all too obvious fact that they were offensive and degrading. Moreover, the five paragraphs that did mention Remedi's role were wholly conclusory. The complaint alleged that "Try was an employee of Remedi" and was "acting within the scope and course of his employment," Second Amended Complaint ¶ 25, but provided no additional support for this claim. The other four paragraphs essentially repeated—without providing a scintilla of factual support— that Try was acting within the scope of his employment. One stated vaguely, without any corroborating details, that Remedi "condoned, ratified and authorized the actions of Try." Second Amended Complaint ¶ 28. Another asserted that the remarks were made "in the

11

execution of the service for which he was engaged by the company." Second Amended Complaint ¶ 27. But this is simply untrue. The service for which Try was engaged was to help send medications to long-term care facilities and to manage Remedi employees. His responsibilities did not involve gossiping to his co-workers. And while the complaint alleged nebulously that Try was a "supervisor," there is not the slightest indication of the nature of Try's supervisory position or what the term in the context of this case even means.

In short, the conclusory language in the complaint does not begin to establish vicarious liability. Try made insulting and offensive statements about a colleague. They were distasteful, to say the very least. But the suit is against Remedi, not against Try. And the district court was right to dismiss it and to deny further leave to amend. Try was not carrying out any task on Remedi's behalf. He was not giving instructions to subordinates, or even having a conversation that related in any way to Remedi's commercial interests. Nor, from all we know from the complaint, did Remedi ever direct or encourage or condone the alleged offense. Try's remarks seemed to "arise wholly from some external, independent, and personal motive." *Davis v. Merrill*, 133 Va. 69, 112 S.E. 628, 631 (1922) (citing 2 Mechem on Agency (2d Ed.) § 1960). Not all comments that warrant internal discipline or even a lawsuit against the one who committed the wrong warrant the imposition of respondeat superior liability. Try's comments, though beyond tasteless, did not fall within the scope of his employment. As a result, Remedi cannot be held vicariously responsible.

IV.

12

For the reasons discussed above, the judgment of the district court is

*AFFIRMED*.