**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 25-1933**

IAN LEWIS AUCKLAND,

        Plaintiff – Appellant,

    v.

GILEAD SCIENCES, INC.; HILARY ZACHRY, in her individual capacity and professional capacity,

        Defendants – Appellees.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  Thomas T. Cullen, District Judge.  (7:24-cv-00501-TTC-CKM)

Submitted:  March 16, 2026                  Decided:  June 9, 2026

Before WILKINSON, HARRIS, and BENJAMIN, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished opinion.  Judge Harris wrote the opinion, in which Judge Benjamin joined.  Judge Wilkinson wrote a separate opinion concurring in part and dissenting in part.

**ON BRIEF:**  Thomas E. Strelka, VIRGINIA EMPLOYMENT LAW, Roanoke, Virginia, for Appellant.  Jonathan M. Albano, Laura A. Saracina, MORGAN, LEWIS & BOCKIUS LLP, Washington, D.C., for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Ian Auckland was fired by his former employer, Gilead Sciences, Inc., after a female co-worker, Hilary Zachry, alleged he made an unwelcome, sexually explicit comment to her at a work conference. Auckland then sued Gilead and Zachry in federal court in Virginia, bringing state-law defamation claims. According to Auckland, Zachry knowingly made false accusations against him, and Gilead, as her employer, was vicariously liable for her actions. The district court dismissed the claims against both defendants, finding that it lacked personal jurisdiction over Zachry – who lived and worked in California – and that Auckland failed to state a claim for vicarious liability against Gilead.

We agree that the district court lacked personal jurisdiction over Zachry. But we conclude that Auckland sufficiently stated a claim for vicarious liability against Gilead under Virginia law, which recognizes a presumption in favor of vicarious liability under conditions satisfied at this stage in the case. We therefore affirm in part, vacate in part, and remand for further proceedings.

2

## I.

## A.

Ian Auckland worked for Gilead Sciences, Inc. ("Gilead"), a biopharmaceutical company, for over nine years.[1]  Gilead is headquartered in California, but Auckland lived in Southwest Virginia and worked remotely from his home.

In 2023, Gilead started a preceptorship program with its Key Accounts Team, a group that worked to secure partnerships and increase the market for Gilead's cancer drugs. Employees accepted into this program would shadow members of the Key Accounts Team to gain experience with the team's work, and participation in the preceptorship program was viewed as a good stepping-stone to a full-time position on the team.  Auckland's colleague Buffy Moran, a member of the Key Accounts Team who also lived and worked in Virginia, recommended Auckland for the preceptorship program, and Auckland applied.

Later that summer, Auckland attended a work conference in Nashville, Tennessee. There, he met Hilary Zachry, a member of the Key Accounts Team who lived and worked in California and served as a mentor for the preceptorship program.  Auckland and Zachry had one brief conversation, during which Auckland told Zachary that he had applied for the preceptorship program.  As Auckland tells it, nothing about the conversation was remarkable, and the two did not speak again.

---

[1] Because the district court dismissed this case at the pleading stage, we describe the facts as alleged in the complaint.  *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

Auckland was accepted into the preceptorship program in October 2023. But a few weeks later, he was invited to a call with Gilead Human Resources, where he learned he was being investigated for allegedly telling Zachry "I want to rip your panties off" during their conversation at the conference in Nashville. He denied making any such comment. Nevertheless, Auckland was soon informed that his employment at Gilead was terminated.

After his termination, Auckland spoke with Moran, who told him that Zachry did not want him to receive the preceptorship position because she "favored other parties for the position." J.A. 80. According to Auckland, this led Zachry to devise a plan to remove him from consideration so that her preferred candidates would be chosen instead. To carry out this plan, he alleged, Zachry falsely told another co-worker that Auckland made the sexually explicit comment to her at the conference in Nashville, and then directed this co-worker to report her false accusation to Gilead.

**B.**

Auckland sued Zachry and Gilead in the Western District of Virginia, bringing one count of defamation and one count of defamation per se against each defendant. His complaint asserted that Zachry's accusations against him were false and defamatory and that Gilead, as her employer, was vicariously liable for this conduct.

The district court dismissed Auckland's first complaint in part, finding that it lacked personal jurisdiction over Zachry. *See Auckland v. Gilead Scis., Inc.*, 2025 WL 314029, at *3 (W.D. Va. Jan. 28, 2025). But the district court granted Auckland leave to amend his complaint to supplement his jurisdictional allegations. *Id.*

4

Auckland filed an amended complaint alleging the same two counts against both defendants, who again moved to dismiss. Zachry reprised her argument that the district court lacked personal jurisdiction over her. Gilead contended that the amended complaint failed to state a claim for vicarious liability against the company because it did not explain how Zachry's alleged defamation was within the scope of her employment. After allowing limited discovery on the personal jurisdiction issue, the district court granted the motion to dismiss as to both defendants and dismissed the amended complaint in full. *Auckland v. Gilead Scis., Inc.* ("*Auckland II*"), 2025 WL 1924386 (W.D. Va. July 14, 2025).

The district court first found that it lacked personal jurisdiction over Zachry, who was domiciled in California. *See id.* at *1, 4–5. Because the Virginia long-arm statute authorizes personal jurisdiction co-extensive with the Due Process Clause, the district court explained, the only question was whether Zachry had sufficient minimum contacts with Virginia to permit the exercise of jurisdiction under the Constitution. *Id.* at *4. Before jurisdictional discovery, Auckland had relied in part on allegations that Zachry communicated her defamatory accusations in Virginia, sharing them with third parties, including at least one Gilead employee, in the state. *Id.* But after discovery revealed those allegations to be "without basis in fact," Auckland relied solely on a single, different contact: a text-message conversation between Zachry and Moran (who, recall, lived in Virginia) regarding Auckland's acceptance into the preceptorship program. *Id.* at *4–5. And that contact, the district court held, was insufficient to support personal jurisdiction over Zachry in Virginia. *See id.* at *5.

5

Next, the district court found that Auckland failed to state a claim that Gilead could be held vicariously liable for Zachry's conduct. *Id.* at *5–7. Here, the district court explained, the "sole question" was whether Zachry was acting within the scope of her employment when she made the allegedly false accusation against Auckland. *Id.* at *5. The district court recognized that under Virginia law, "[t]he existence of an employment relationship gives rise to a rebuttable presumption that the employee was acting within her scope of employment," but also noted that a plaintiff "can plead h[imself] out of court" by alleging facts that clearly and irrefutably rebut that presumption. *Id.* (quoting *Parker v. Carilion Clinic*, 819 S.E.2d 809, 822 (Va. 2018)). Turning to the amended complaint, the district court found that Auckland had not sufficiently pled that Zachry was acting within the scope of her employment, in part because he did not allege that Gilead had a policy encouraging or providing guidance on the reporting of sexual harassment by employees. *Id.* at *6–7.

Auckland timely appealed the dismissal of his amended complaint.

## II.

### A.

We review de novo the dismissal of Auckland's claims against Zachry for lack of personal jurisdiction. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009). Where the parties "were given a fair opportunity to develop the record regarding personal jurisdiction" – here, through jurisdictional discovery – the plaintiffs must "establish[] personal jurisdiction by a preponderance of the evidence." *Sneha Media*

6

& Ent., LLC v. Associated Broad. Co., 911 F.3d 192, 197 (4th Cir. 2018); *see also Grayson v. Anderson*, 816 F.3d 262, 269 (4th Cir. 2016).

Our familiar test for specific personal jurisdiction "requires satisfying the standards of the forum state's long-arm statute and respecting the safeguards enshrined in the Fourteenth Amendment's Due Process Clause." *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012). As the district court recognized, "[b]ecause Virginia's long-arm statute extends personal jurisdiction to the outer bounds of due process," this test collapses into one question: whether exercising personal jurisdiction complies with the requirements of due process. *Id.*; *see Auckland II*, 2025 WL 1924386, at *4.

To answer that question, we ask whether the defendant – California resident Zachry – had sufficient "minimum contacts" with the forum state such that requiring her to litigate there would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Specifically, we consider three factors: "(1) the extent to which the defendant purposefully availed [her]self of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 351–52 (4th Cir. 2020). To find that specific personal jurisdiction exists, the defendant must have had "contacts with" the forum state, and those contacts must be "the basis for the suit." *Shandong Linglong*, 682 F.3d at 301.

7

On appeal, Auckland identifies two types of activities that, in his view, show that Zachry purposefully directed activities at Virginia. First, he contends that Zachry had regular, work-related contact with Moran, who she knew to be a resident of Virginia. And second, he points to a specific text message conversation between Zachry and Moran, arguing that in this conversation, Zachry communicated with Moran about her allegedly defamatory accusations.

The first class of activities – general work communications with Moran – cannot support specific personal jurisdiction over Zachry in this case. As noted above, the relevant question is not only whether the defendant directed activities at the forum state, but also whether those "contacts with the forum state *form the basis of the suit*." *Consulting Eng'rs Corp.*, 561 F.3d at 278–79 (emphasis added). As the Supreme Court has made clear, specific personal jurisdiction requires "an affiliation between the forum and the underlying controversy." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 264 (2017) (internal quotation marks omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* Zachry's general work-related communications with Moran are unconnected to, and in no way form the basis of, Auckland's defamation claims against Zachry – and are thus irrelevant to the personal jurisdiction inquiry here.

For similar reasons, the specific text conversation identified by Auckland does not establish personal jurisdiction over Zachry. Auckland does not claim that this is a conversation in which Zachry shared her purportedly defamatory accusation with Moran. Instead, Auckland acknowledges that Zachry told Moran about her allegations while both

8

women were in Nashville, which could not create personal jurisdiction in Virginia. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[The] 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."). But Auckland now claims that Zachry continued discussing the topic with Moran via text message when Moran returned home to Virginia.

The problem for Auckland is that the single conversation he relies on contains no mention of the allegedly defamatory statements at issue, as evidence from jurisdictional discovery established. *See* J.A. 209. Instead, the brief discussion concerned only Auckland's acceptance to the preceptorship program, with Zachry expressing her objection to that outcome. *See id.* But Zachry did not make any accusation against Auckland or refer in any way to the alleged episode at the Nashville conference. *Id.* Because the purportedly defamatory statements were not discussed, this conversation could not "form the basis" for Auckland's defamation suit. *Consulting Eng'rs Corp.*, 561 F.3d at 278–79. So even assuming the text conversation was a contact Zachry purposefully directed at Virginia, that conversation could not establish personal jurisdiction over Zachry. *See id.*; *Bristol-Myers Squibb*, 582 U.S. at 264.[2]

---

[2] The district court doubted that the conversation could qualify as a minimum contact with Virginia and found personal jurisdiction lacking for that reason. *See Auckland II*, 2025 WL 1924386, at *5. We need not address that analysis, given our affirmance on the ground described above.

9

Because Auckland did not establish that Zachry had sufficient minimum contacts with Virginia related to this case, we affirm the district court's dismissal of the claims against Zachry for lack of personal jurisdiction.

**B.**

Next, we consider Auckland's claims against Gilead, which seek to hold the company vicariously liable for Zachry's allegedly defamatory statements. We review de novo the district court's dismissal of these claims for failure to state a claim. *Meridian Invs., Inc. v. Fed. Home Loan Mortg. Corp.*, 855 F.3d 573, 580 (4th Cir. 2017).

In Virginia, an employer is vicariously liable for the tortious act of its employee if the employee was (1) "performing [her] employer's business" and (2) "acting within the scope of [her] employment." *Parker*, 819 S.E.2d at 819.[3] Vicarious liability does not exist, however, when the employee's act was "unauthorized" and arose "*wholly* from some external, independent, and personal motive." *Id.* at 821.

Importantly, plaintiffs claiming vicarious liability under Virginia law "benefit from a unique presumption" that is triggered "once [the] complaint alleges the existence of an employment relationship at the time of the employee's tort." *Our Lady of Peace, Inc. v. Morgan*, 832 S.E.2d 15, 25 (Va. 2019). At that point, the law recognizes "a rebuttable presumption that facts exist" – even if "not specifically pleaded" – that would satisfy the test for vicarious liability. *Parker*, 819 S.E.2d at 822. This presumption "shifts the burden of production to the employer to present facts sufficient to permit the factfinder to conclude

---

[3] The parties agree that Virginia law governs Auckland's claims against Gilead.

10

that the employee was *not* acting within the scope of [her] employment at the time of [her] tortious conduct." *Morgan*, 832 S.E.2d at 25 (emphasis added). And it "applies at the outset of the case, beginning with the complaint." *Id.* (internal quotation marks omitted).

Once triggered, this presumption can be rebutted in two ways. First, as noted above, the employer can present facts sufficient to rebut it. *See id.* But because courts do not resolve factual disputes at the motion to dismiss stage, this process would occur only later, through discovery and summary judgment. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007); *Parker*, 819 S.E.2d at 823 (noting that "none of [the defendant's] factual contests can be addressed at the pleading stage"). The presumption can also be rebutted earlier in the litigation by "the very complaint that triggers it," if the plaintiff "affirmatively alleg[es] facts that rebut" it. *Morgan*, 832 S.E.2d at 25. But for that to happen at the motion to dismiss stage, "the self-refutation must be clear, not conjectural, and irrefutable rather than debatable." *Parker*, 819 S.E.2d at 822.

Here, the district court acknowledged this state-law presumption. *See Auckland II*, 2025 WL 1924386, at *5. But it seems not to have actually applied it; the court did not ask whether Auckland's amended complaint triggered the presumption and, if so, whether the presumption was rebutted. Instead, the court jumped directly to whether "[r]eporting sexual harassment" could fall within the scope of Zachry's employment and concluded that it could not – in part because Auckland did not allege that Gilead encouraged its employees to report sexual harassment. *Id.* at *6. But the point of the presumption, again, is that it presumes facts that are *not* specifically alleged. And the district court's analysis, we

11

conclude, effectively negated the presumption in favor of vicarious liability, which should have applied in Auckland's favor at this stage of the litigation.

First, it is clear that Auckland's amended complaint triggered the presumption in favor of vicarious liability. At multiple points, the amended complaint alleges that Zachry was a Gilead employee at the time of the alleged defamation and that the defamatory statements were made as part of Zachry's employment with the company. *See, e.g.*, J.A. 78, 79, 83, 84. Those allegations are sufficient to bring the presumption into play. *See Morgan*, 832 S.E.2d at 25; *Parker*, 819 S.E.2d at 822.

At that point, the only question the district court should have asked is whether the presumption had been rebutted. *See Morgan*, 832 S.E.2d at 25. As explained above, at the motion to dismiss stage, Gilead had not yet had the opportunity to rebut the presumption through the proffer of factual evidence. *See Bosiger*, 510 F.3d at 450; *cf. Parker*, 819 S.E.2d at 823. Thus, the presumption could be rebutted only through "self-refutation": if the complaint's allegations themselves "categorically rebut[ted] any presumption that [Zachry's alleged] offenses could ever be within the scope of employment for vicarious liability purposes." *Morgan*, 832 S.E.2d at 25. We see nothing in the complaint that could meet this high bar.

First, as the district court itself acknowledged, Zachry's allegedly defamatory accusation may well have been within the scope of her employment if a Gilead policy encouraged employees to report sexual harassment, or if Gilead otherwise "provided [] guidance on when or how to report sexual harassment." *Auckland II*, 2025 WL 1924386, at \*6 (discussing and distinguishing *Brown v. United States*, 933 F. Supp. 2d 780, 785 (E.D.

12

Va. 2013)).  It is true, as the court noted, that Auckland does not allege the existence of such a policy in his amended complaint.  *See id.*  But at this stage in the application of Virginia's presumption, a court presumes the existence of facts – including those not pleaded – that would put an employee's actions within the scope of her employment.  The only question at this step is whether anything that *is* pleaded in Auckland's complaint categorically *forecloses* the possibility that Zachry made her accusation within the scope of her employment – for instance, pursuant to a Gilead policy on sexual-harassment reporting – and nothing in the complaint rules out that hypothesis.  *See Morgan*, 832 S.E.2d at 25 (framing inquiry as whether it is "possible to hypothesize," consistent with the complaint, that employee conduct could have occurred within the scope of employment).

Even apart from any company policy on sexual harassment, the allegations in Auckland's complaint make it "possible to hypothesize" that Zachry's alleged defamation – her accusation against Auckland – occurred "while [she] was . . . performing a specific job-related service."  *Id.*  In his amended complaint, Auckland alleges that Zachry was "a mentor in the preceptorship program" to which he had applied.  J.A. 80.  It is easy to imagine that preceptors had some role in selecting program participants.  And if that is so, then the conduct alleged by Auckland – making a false accusation in order to oppose a disfavored candidate and to advance more favored candidates – would fall squarely within this portion of Zachry's job responsibilities.  Zachry's alleged *method*, to be sure, would not be in her employer's interest.  But that is generally true for all intentional torts, and it does not preclude vicarious liability under Virginia law.  *See Parker*, 819 S.E.2d at 822.

13

Virginia's *Morgan* case is instructive here.  In *Morgan*, a plaintiff sought to hold a nursing home vicariously liable for the acts of an employee, a nursing assistant who had allegedly sexually abused and raped a resident.  832 S.E.2d at 19.  Applying "the unique pleading presumption applicable to respondeat superior claims," the Supreme Court of Virginia found that the plaintiff's complaint adequately stated a claim for vicarious liability at the pleading stage.  *Id.* at 25–26.  The defendant argued that the presumption was refuted by the complaint itself, because offenses like the alleged molestation and rape were necessarily based on a wholly personal motive and were outside the scope of employment.  *Id.* at 25.  But the court disagreed.  It was "possible to hypothesize" that the alleged abuse overlapped with the performance of the nursing assistant's job-related duties, which included bathing and changing the clothes of residents, and therefore that the employee acted from a "mixed motive" – both performing his job *and* committing the alleged abuse – "and not *wholly* from some external, independent, and personal motive."  *Id.* at 25.  And given Virginia's presumption, that was enough to preclude dismissal at the pleading stage of the case.  *Id.* at 26.  We think the same reasoning applies in this case, where Auckland's complaint does not  "irrefutab[ly]" negate the possibility that Zachry was acting within the scope of her employment when she purportedly made her false accusation against Auckland.  *See Parker*, 819 S.E.2d at 822.

Our court's decision in *Garnett v. Remedi Seniorcare of Va., LLC*, 892 F.3d 140 (4th Cir. 2018), on which the district court relied, does not require a different result.  In that case, we concluded that offensive statements made by one employee to another could not support a claim for vicarious liability against the employer, because the statements fell

14

outside the scope of employment. *See id.* at 142, 145–46. But crucially, *Garnett* was decided before the Virginia Supreme Court clarified the scope and operation of the presumption in favor of vicarious liability in *Parker* and *Morgan*. And perhaps for that reason, the presumption was neither raised nor considered in *Garnett*. *See generally* 892 F.3d 140. Here, however, as we have explained, the presumption applies in Auckland's favor at this stage of the litigation, requiring us to presume that Auckland can satisfy the requirements for establishing vicarious liability.

To be clear, we do not decide today (and should not be understood to suggest) that Zachry was in fact acting within the scope of her employment when she made her accusation against Auckland. Virginia's rebuttable presumption is just that: rebuttable. Gilead has not yet had the chance to meet its burden of production by presenting facts that would allow for a finding that Zachry was acting outside the scope of her employment at the time of her allegedly tortious conduct. *See Morgan*, 832 S.E.2d at 25. And "[f]acts that come to light later might affirm or disaffirm the presumption," which "disappears in the face of positive facts to the contrary." *Parker*, 819 S.E.2d at 822. Gilead will have its opportunity to marshal "positive facts" to rebut the presumption. We hold only that in light of Virginia's rebuttable presumption and at this early stage of the litigation, Auckland's amended complaint adequately states a claim for vicarious liability against Gilead. We therefore vacate the dismissal of Auckland's claims against Gilead and remand for further proceedings on these claims.

15

**III.**

For the foregoing reasons, we affirm the district court's dismissal of the claims against defendant Hilary Zachry for lack of personal jurisdiction, vacate the dismissal of the claims against defendant Gilead Sciences, Inc., and remand for further proceedings.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*

WILKINSON, Circuit Judge, concurring in part and dissenting in part:

I would affirm in its entirety the district court's dismissal of the defamation claim against Gilead Sciences, Inc.* According to Ian Auckland's meager complaint, Hilary Zachry falsely accused him of telling her "I want to rip your panties off." Gilead did not in any way encourage Zachry to report this alleged harassment, nor was she at all motivated by her employer's interests in so doing. Just take Auckland's word for it: "Zachry [accused him] to fulfill her own personal desire that Auckland not get the preceptorship position." Opening Br. at 21. Respondeat superior has limits, and this case is a textbook example of where they apply.

But the majority keeps this doomed lawsuit on life support. In the process, it forgives the entirely perfunctory nature of Auckland's complaint; contravenes directly on-point Fourth Circuit precedent; and undermines a recent effort by the Virginia Supreme Court to emphasize the bounds of respondeat superior. In the majority's view, employers must paternalistically supervise every conversation between their employees, regardless of subject, or else risk going out of business. Virginia tort law does not require such an authoritarian workplace.

## I.

To see where the majority goes awry, recall the elementary principles of respondeat superior. Generally speaking, this doctrine applies only when "the employer (a) bears at least partial responsibility for the tortious conduct or (b) has some ability to limit the

---

* I concur in the majority's personal jurisdiction analysis.

17

likelihood that the employee would commit a tort." *Garnett v. Remedi SeniorCare of Va., LLC*, 892 F.3d 140, 144 (4th Cir. 2018).

In other words, respondeat superior is not boundless. Sometimes, an employee commits misconduct so wholly disconnected from his employment that the employer both had nothing to do with the tort and cannot rectify matters for the future. To be sure, it may be tempting in these situations to hold the employer liable: someone has been wronged, after all, and the employee at fault often lacks sufficient resources to make the victim whole. Blindly expanding respondeat superior in service of plaintiffs, however, forgoes entirely tort law's aims to deter and efficiently distribute risk. Compensation by any means necessary threatens the functional operations of the innocent employer to no good end.

Take the setting of this case. In virtually every workplace, employees interact with each other around the clock, conversing among themselves about a wide array of topics. Certainly, some of these discussions pertain to work. But plenty of others concern the better parts of life, be it vacations, sports, or movies. Respondeat superior cannot possibly render employers liable for all of the above. Gone would be the casual chitchat at the watercooler and the friendly exchange at the office door. In their stead would be a sterile atmosphere in which the employer closely monitors every little thing about its shop, lest a wayward comment be the impetus for a bankruptcy-inducing lawsuit. "For all its undoubted value, respondeat superior and the resultant fear of liability should not propel a company deep into the lives of its workers whose privacy and speech interests deserve respect." *Id.*

18

II.

In practically every jurisdiction, then, respondeat superior requires more than just the fact that the tortfeasor-employee was on the clock at the time he committed the tort. Rather, the wrong must have occurred while the employee was "performing work assigned by the employer or engaging in a course of conduct subject to the employer's control." Restatement (Third) of Agency § 7.07(2) (A.L.I. 2006). In addition, vicarious liability is generally unavailable when the employee's tort "occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." *Id.*

Virginia has long been part of each consensus. It confirmed as much less than a decade ago in *Parker v. Carilion Clinic*, 819 S.E.2d 809 (Va. 2018). There, the Virginia Supreme Court reiterated, as a first, objective inquiry, that "no [vicarious] liability can be imposed if the tortious act did not arise out of the 'very transaction,' or service or task, that the employee was being paid to perform." *Id.* at 819 (citation omitted) (quoting *Manuel v. Cassada*, 59 S.E.2d 47, 50 (Va. 1950)). It added, as a second, subjective inquiry, that "respondeat superior liability cannot extend to an employer for an unauthorized tortious act by an employee arising '*wholly* from some external, independent, and personal motive on the part of the [employee] to do the act upon his own account.'" *Id.* at 821 (alteration in original) (quoting *Smith v. Landmark Commc'ns, Inc.*, 431 S.E.2d 306, 307–08 (Va. 1993)). In order for respondeat superior to apply, the employee must not have been acting from some personal motive quite disconnected from the employer's business. *Id.* at 822.

The majority ignores both steps of this analysis. Let's consider each in turn.

19

A.

As to the objective inquiry, Gilead is a biopharmaceutical company focused on the research and development of antiviral drugs. Consistent with this goal, Zachry worked in sales as an account director to increase the market for Gilead's cancer drugs, such as by partnering with pharmacies and cancer centers. To state the obvious, she was not paid by Gilead to report sexual harassment or to spread false accusations. The complaint does not suggest otherwise.

This dooms Auckland's claim. Even if Zachry tendered her allegedly defamatory remarks while on the job, "the *service itself*, in which [her purported] tortious act was done" fell outside "the ordinary course of [Gilead's] business." *Id.* at 819 (quoting *Gina Chin & Assocs., Inc. v. First Union Bank*, 537 S.E.2d 573, 578 (Va. 2000)). Put differently, the attested defamation did not occur while Zachry was "'performing a normal function' of h[er] assigned job." *Id.* (quoting *Gina Chin*, 537 S.E.2d at 579). Perhaps things would be different if Zachry was an employee in human resources. But just as depositing checks has nothing to do with the functions of a janitor, *id.* at 820, reporting sexual harassment has nothing to do with the functions of an account director.

Auckland overlooks this dispositive point. Indeed, his complaint dedicates just two sentences to the topic of vicarious liability, asserting in conclusory fashion both times that "Ms. Zachry and others acted within the scope of their employment, resulting in liability for [Gilead] on the basis of respondeat superior." J.A. 83–84. To be clear, this quotation is not an excerpt. It is the *entirety* of the complaint's discussion about respondeat superior.

20

B.

As to the subjective inquiry into employee motive, Auckland alleges numerous times that Zachry defamed him *not* to benefit Gilead, but to serve her own interests. Consider the following: "Ms. Zachry favored other parties for the [preceptorship] position over Mr. Auckland. At all times, Ms. Zachry was motivated by this desire. In order to effectuate a result favorable to her, she intended to harm Mr. Auckland. . . . Ms. Zachry at all times acted with malice against Mr. Auckland." J.A. 80.

At the motion-to-dismiss stage, we must take Auckland at his word. And his word is that Zachry's alleged defamatory remarks were never meant to benefit Gilead, not even in part. Instead, she was always fueled by ill-defined favoritism spiced with ill-defined spite toward Auckland. Even on appeal, Auckland repeats—as a "fact"—"that Zachry made the [defamatory] statement to fulfill her own *personal desire* that Auckland not get the preceptorship position." Opening Br. at 21 (emphasis added).

As already explained, the alleged defamation in this case formed a "marked and unusual" deviation from Gilead's biopharmaceutical business and from Zachry's position as an account director. *Parker*, 819 S.E.2d at 822 (quoting *Gina Chin*, 537 S.E.2d at 578). This basic observation, combined with Auckland's tireless insistence that Zachry defamed him purely out of self-interest, readily justifies dismissal. *See id.*

The majority contends Auckland triggered a presumption of vicarious liability by alleging merely that Zachry defamed him while employed at Gilead. *See* Maj. Op. at 12. In understating Auckland's simultaneous allegations about Zachry's motive, however, the majority converts a rebuttable presumption into an irrebuttable presumption. This wholly

21

distorts Virginia law because it enlarges vicarious liability to a per se point where respondeat superior must always and invariably apply. In order to avoid liability under the majority's regime, the employer, to repeat, must now become an all-spying eye. This is hardly an environment in which any employee would care to work, and it is hardly an environment in which any employer can cultivate wholesome employee morale. The facts here, as Auckland's complaint reveals, border on the frivolous. If his complaint does not count as one "affirmatively alleg[ing] facts that rebut" the presumption, *id.* at 11 (quoting *Our Lady of Peace, Inc. v. Morgan*, 832 S.E.2d 15, 25 (Va. 2019)), no complaint does.

### III.

The majority's engagement with our own case law is even more disquieting. In *Garnett v. Remedi SeniorCare of Virginia, LLC*, 892 F.3d 140, a woman sued her employer for defamation after a coworker, while on the job, allegedly told other coworkers that she was having surgery on her vagina because of a sexually transmitted disease. *Id.* at 142–43. Applying Virginia law, this court held—"beyond any doubt," no less—that the complaint failed to state a claim for vicarious liability. *Id.* at 142 (quoting *Singleton v. Wulff*, 428 U.S. 106, 121 (1976)). It reasoned that the plaintiff had "hardly made any attempt to connect [her coworker's] remarks to [the employer's] business interests or to explain how the offensive statements otherwise fell within the scope of his employment." *Id.* at 146.

On both the law and facts, the dismissal of Auckland's case is even easier. After *Garnett*, the Virginia Supreme Court has only more explicitly reaffirmed its commitment to "the 'first principles' of respondeat superior." *Our Lady of Peace*, 832 S.E.2d at 22–23 (quoting *Parker*, 819 S.E.2d at 819). Again, these first principles require sensibly cabining

22

vicarious liability to tortious acts arising out of the job that the employee was paid to do. *Id.* Thus, even if there were doubts about the limits of respondeat superior in Virginia at the time of *Garnett*, the Virginia Supreme Court has since dispelled these "doctrinal vagaries." *Id.* at 23 (quoting *Parker*, 819 S.E.2d at 819). Moreover, the complaint here gives even less thought to vicarious liability than the one in *Garnett*. *Compare* J.A. 83–84 (two conclusory sentences), *with Garnett*, 892 F.3d at 146 (five conclusory paragraphs).

It should come as little surprise, then, that the majority does not attempt to reconcile its holding with this binding precedent. Rather, it claims Virginia's rebuttable presumption of vicarious liability "was neither raised nor considered" there because the Virginia Supreme Court "clarified" its doctrine only after *Garnett*. Maj. Op. at 15. Between the lines is speculation that that the panel missed or did not anticipate the rebuttable presumption's existence, or else its decision would have come out differently. The rub is that *Garnett* does govern bind cases, like this one, where the issue is adequately argued.

Such sleight of hand is no way to handle circuit precedent. And it is further flat-out wrong. The panel in *Garnett* cited, both at oral argument and in its opinion, precedent recognizing a rebuttable presumption of vicarious liability. *See Garnett*, 892 F.3d at 145 (citing *Lacasse v. Didlake, Inc.*, 712 F. App'x 231, 235–36 (4th Cir. 2018) (per curiam)); Oral Argument at 18:13–19:02, *Garnett*, 892 F.3d 140 (No. 17-1890). And long has the Virginia Supreme Court applied the presumption. *See, e.g.*, *Gina Chin*, 537 S.E.2d at 577–78. The path to affirmance is brightly lit, and I regret the majority's reluctance to follow it.

23

IV.

To recap, the majority downplays the half-baked nature of Auckland's complaint, in stark violation of the Supreme Court's pleading requirements in *Iqbal*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It disregards our own precedent in *Garnett*. *See Garnett*, 892 F.3d at 143–46. And it ignores the Virginia Supreme Court's recent delineation of the carefully drawn bounds of respondeat superior, which came after—and aligned with— *Garnett*. *See Parker*, 819 S.E.2d at 818–22. It is unusual for my esteemed friends in the majority to commit this trifecta of transgressions, but its disposition here does exactly that. All to make way for more intrusive employers and more oppressive worksites. I respectfully dissent.